[Civ. No. 4437. Third Appellate District.—March 3, 1932.]

FRANK FREEMAN et al., Respondents, v. M. L. BOUTON, etc., Appellant.

Bond & Deirup for Appellant.

Fred C. Pugh for Respondents.

PLUMMER, J.—This cause is before us upon an appeal from an order of the trial court dated July 22, 1929, filed *nunc pro tunc* as of May 2, 1929, denying a petition theretofore filed by the appellant on the ninth day of February, 1927, praying that an order be made modifying a decree adjudging water rights and providing for the division of certain waters, dated July 29, 1929, as amended by an order dated December 23, 1920.

The contention on the part of the appellant is that the orders made by the trial court for the purposes of carrying out its decree settling water rights between the parties hereto, and providing for the division thereof in pursuance of such decree, are erroneous in that the appellant was decreed to be the owner of 14/30ths of the water flowing in the ditch referred to in these proceedings, and that upon the division thereof, as made pursuant to the orders of the court, the quantity of water delivered to the appellant by the method of division pursued and the boxes installed, the appellant has failed to receive his proper proportion of said waters to the extent of .53 cubic feet per second.

In making the diversion of the waters according to the orders of the court, the commissioner appointed so to do inserted in the box diverting the water to the appellant a 6¾-inch plank, which reduced the flow of water into appellant's ditch to the extent just mentioned. The real cause of the controversy is the fact that the plank just referred to was installed in the box diverting the water to the plaintiff's ditch to equalize the loss of water by evaporation, and to give to the respondents in this action the quantity of water to which they were entitled, such quantities being delivered to their ditches without any diversion having first been made between the intake of the main ditch and the place of the installation of the boxes delivering water to the respondents.

While a number of cases have been called to our attention, and the argument of counsel has taken a rather wide range, a setting forth of the findings of the court as originally made and entered in this cause, and the decree of the court entered in pursuance thereof, and the orders made, and the fact that the order from which this appeal is

prosecuted, was made upon conflicting testimony, is all that is necessary to a determination herein.

The findings, decree and orders to which we have referred do not support appellant's contention that he is entitled to 14/30ths of the water flowing in the main ditch known as and called in the transcript, "Bramlett, Bristol & Benton water ditch", but that the appellant is only entitled to the residue after certain quantities have been diverted therefrom, based upon measurements when no diversions are being made between the intake of such ditch and the point of diversion. Whether the findings are supported by the testimony in the main case, and the decree properly supported by the findings, are questions which we must take as definitely settled.

Finding XV of the main case, as set forth in the record before us, is as follows:

"The court further finds and decides that in order that the waters of said ditch shall be proportionately divided and distributed in accordance with the findings aforesaid, subject to natural losses in transit, that division boxes and measuring gauges be installed in said Bramlett, Bristol and Benton ditch in the manner hereinafter specified, the expense thereof to be borne ratably by plaintiffs, defendants Bramlett and Northern California Power Company, Consolidated, i. e.

"1. A measuring gauge at a point on the main ditch immediately above the first diversion therefrom, commonly known as the 'Old Bramlett diversion'.

"2. A division box and gauge at the point where said ditch divides into the north and south forks hereinabove described so as to automatically cause to flow in the south fork of said ditch 8/24ths of the whole flow of said Bramlett, Bristol and Benton ditch as measured at said forks when no diversions have been made from the main ditch above said forks.

"3. A division box and gauge in the north fork of said ditch at the west line of the lands of defendants Bramlett, such gauge to be rated so as to register and discharge at said point for the use of plaintiff Frank Freeman and defendant Northern California Power Company, Consolidated, 4/24ths of the whole flow of said Bramlett, Bristol and Benton ditch as measured at the forks above mentioned

when no diversions have been made from the main ditch above said forks.

"4. A division box and gauge at a point on the north fork of said ditch at or near where the county road now crosses the west line of the plaintiff John Meyer in the S. E. ¼ of Section 29, Twp. 30 north, range 1 East, or at any other point west of the west line of the lands of the said Bramletts which will give the requisite grade to carry the Northern California Power Company, Consolidated's, share to the highest land on the properties purchased from T. H. Benton and lying south of Digger Creek. Said division box to so divide the waters of said north fork at said point of division that the Northern California Power Company, Consolidated, will receive ¾ thereof, and the plaintiff Frank Freeman, will receive ¼ thereof."

Subdivision 2 of the finding just set forth specifies that the 8/24ths referred to is to be diverted from the main ditch and measured at the forks where the box is to be located "when no diversions have been made from the main ditch above said forks". The forks being designated as the place for the location of the measuring box delivering the 8/24ths.

In the conclusions of law the same provision appears for the division which we have just mentioned. In paragraph IV of the conclusions of law, where it speaks of the waters to be divided between Freeman and the Northern California Power Company, Consolidated, now the Pacific Gas and Electric Company, it is distinctly set forth that they are entitled to have flow in what is called the north fork of said ditch, a certain quantity of water, to wit, 4/24ths of said main ditch, as the waters come down and pass the west line of the lands owned by Bramlett and Bramlett, now owned by the appellant Bouton.

The decree following the findings and conclusions of law decrees the division of the water as follows: "That the plaintiffs are the owners of the right to divert from Digger Creek in Tehama County, California, through the Bramlett, Bristol and Benton Water Ditch described in the complaint and into the south fork thereof eight twenty-fourths of the waters carried by the said ditch and which said ditch is entitled to carry, and that they have the right to divert through said ditch and by means of the south fork thereof

and to use upon their lands described in the complaint their said portion of the waters of said ditch.''

Paragraph III, in further decreeing the division of the water between certain owners, provides for its passing the west line of the lands which are now owned by the appellant in a certain quantity before the diversion of the quantity therein mentioned is made.

The decree, further, in providing for the division of the water and the installation of boxes for the diversion, and the delivering to the owners such quantities of water to which it is found that they are entitled, provides as follows: ''A division box and gauge at the point where said ditch divides into the north and south forks in the complaint described, so as to automatically cause to flow in the south fork of said ditch eight twenty-fourths of the whole flow of said Bramlett, Bristol and Benton ditch, as measured at said forks when no diversions have been made from the main ditch above said forks. A division box and gauge in the north fork of said ditch at the west line of the lands of defendants Bramlett, such gauge to be rated so as to register and discharge at said point for the use of plaintiff Frank Freeman and defendant Northern California Power Company, Consolidated, four twenty-fourths of the whole flow of said Bramlett, Bristol and Benton ditch as measured at the forks above mentioned when no diversions have been made from the main ditch above said forks.''

The order of the court purporting to maintain the former order providing for the diversion, filed December 23, 1920, makes more specific the determination of the court as to the rights of the parties in that it sets forth that the 8/24ths of the whole flow of said Bramlett, Bristol and Benton ditch, being the main ditch, shall be measured at the forks from the main ditch delivering water to the respondents herein when no diversion has been made of the waters of said ditch above the point of diversion providing for the delivery of 8/24ths of the whole flow of said ditch.

Again, in paragraph II of the order just referred to in relation to the 4/24ths adjudged to belong to certain owners, we find the following language: ''that is to say, four twenty-fourths of the whole flow of the said Bramlett, Bristol and Benton ditch is to be delivered at the said box and gauge at the west line of defendant Bramlett's

land'', being the west line of the land now owned by the appellant.

Going down the provisions of the order relating to the installation of boxes and the construction given upon the findings and decree to which we have referred, the language of subdivision V of the order definitely fixes the quantity of water to which the appellant is entitled of the waters flowing in said ditch after the diversions provided for have been made, which language is as follows:

''A division box to be placed in the main Bramlett-Bristol-Benton ditch above where a box was fixed by W. F. Luning at what is known as the intake of Bouton's new ditch, said box to be above said point, and above a fence that now crosses the ditch, near said in-take. Said division box so to be constructed at said point to so divide the waters of said main ditch that enough shall go down the main ditch to convey all the waters above ordered to be delivered, to-wit, eight twenty-fourths of said ditch to the south fork ditch, four twenty-fourths to the north fork of the ditch as above specified and limited, one-thirtieth to the Pacific Gas and Electric Company, and, after enough water has been permitted to go down the main ditch to supply all the above water rights, all the remainder of said water flowing in said main channel of said ditch to flow in M. L. Bouton's new ditch through the division box above directed to be installed.''

The record shows that the point of diversion made by the appellant has been changed from the diversion made by his predecessors in interest, while the decree and the orders to which we have referred gave to the appllant certain waters passing down· the ditch. After the specified quantity had been delivered as decreed by the court, the residue went on to a diversion made by the· appellant's predecessors. It now appears that the point of diversion made by the appellant is several hundred feet nearer the intake of the main ditch and above the location of the division boxes herein referred to. Thus, if the appellant takes from the main ditch at a point of diversion above all the boxes herein just referred to, 14/30ths of the water coming down the main ditch, it is readily apparent that the respondents are necessarily deprived of the quantity which the decree adjudges they are entitled to. By the original

decree and the order made in pursuance thereof the appellant was held to be entitled only to the residue of the waters after the respondents upon this hearing had been given their respective quantities, and the residue left in the ditch was to pass on down to the lands and premises of appellant's predecessors, or to be used by them. Under such circumstances the appellant and his predecessors would necessarily suffer some loss by evaporation and scepage. To counteract this loss and give to the respondents in this proceeding their decreed portion of the waters of said main ditch, the plank referred to was placed in the box, diverting the water from the main ditch to what is now called the "new ditch", owned by the appellant. Upon the hearing of this motion, affidavits on behalf of the appellant and affidavits on behalf of the respondents were introduced in evidence, and the trial court made an examination of the premises involved in this action, and from such affidavits and examination, came to the conclusion that the order for the installation of diversion boxes followed the decree of the court in the main action, and that the installation of the boxes diverted the waters of the Bramlett, Bristol and Benton ditch in the proportion to which the respective parties were and are entitled. This order being based upon conflicting testimony is binding upon this court, assuming that the court had jurisdiction to make the order. If the court had no jurisdiction to make such order, then the appeal therefrom would necessarily present nothing for this court to consider.

It is urged on the part of the respondents in this proceeding that the court had no jurisdiction to make any order modifying the decree made in the main case. This may be admitted, but if it were found that the decree and orders are not being correctly followed, we do not see how a correction of the method of diversion would in anywise affect or alter the decree. As stated, however, the question presented to the trial court upon the hearing from which this appeal has been taken, presented upon conflicting testimony the question as to whether the prescribed procedure was being followed, and the court having held in substance that such is the case, we have no recourse but to affirm the order as a *résumé* of the findings, decree and orders which we have set forth herein shows that the court found the

appellant entitled to only a certain residue. Mathematically, as contended by the appellants, it does figure out 14/30ths, but as set forth in the decree it shows that the appellant was only entitled to 14/30ths less whatever waste there might be due to evaporation and seepage.

The order is affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.